**RAINBOW VALLEY CITRUS CORP. et al., Appellants,**

**v.**

**FEDERAL CROP INSURANCE CORP., Appellee.**

**No. 73–2112.**

United States Court of Appeals, Ninth Circuit.

Nov. 7, 1974.

B. Michael Dann (argued), of Treon, Warnicke & Dann, Phoenix, Ariz., for appellants.

Thomas G. Wilson (argued), Dept. of Justice, Washington, D.C., for appellee.

## OPINION

Before CHAMBERS and HUFSTEDLER, Circuit Judges, and POWELL,* District Judge.

HUFSTEDLER, Circuit Judge:

Plaintiffs, who are three citrus growers in the Rainbow Valley area of Maricopa County, Arizona, filed an action challenging a decision by the Federal Crop Insurance Corporation (FCIC) to discontinue citrus insurance in the Rainbow Valley area. The district court granted summary judgment in favor of the defendant. On appeal plaintiffs contend that in discontinuing insurance in Rainbow Valley without giving plaintiffs prior notice or an opportunity to be heard, the FCIC violated (1) the rule-making requirements of the Administrative Procedure Act (5 U.S.C. § 553), or (2) the due process clause of the Fifth Amendment. For the reasons set forth below, we affirm.

The Federal Crop Insurance Act (7 U.S.C. § 1501 et seq.) authorizes the FCIC to enter into contracts for crop insurance and to "limit or refuse insurance in any county or area . . . on the basis of the insurance risk involved" (7 U.S.C. § 1508(a)). Cancellation authority is granted to fulfill the Act's purpose of "improving the economic stability of agriculture through a sound system of crop insurance" (7 U.S.C. § 1502). A crop insurance contract arises when the FCIC accepts an application for insurance on a crop grown in an area that the FCIC has classified as insurable. The contract continues in effect from year to year, but after the first year it may be canceled by either party upon notice duly given on or before August 31 preceding the crop year for which the cancellation is effective (7 C.F.R. § 409.25(11)). Citrus crop years commence on November 1 and end on October 31 the following year; they are designated by the calendar year in which they originate.

Citrus insurance was first offered in the Rainbow Valley area for the crop year 1968, limited to losses caused by frost. Plaintiffs applied for and received crop insurance. Freezes occurred in Rainbow Valley in both the 1968 and 1969 crop years, requiring the FCIC to pay large indemnities to the insureds in that area. On August 12, 1970, the FCIC sent a letter to plaintiffs advising them that Rainbow Valley was being reclassified as an uninsurable area based on the severe losses experienced during the previous two crop years and on the prediction that similar losses were likely to occur in the future. Plaintiffs were not given prior notice nor an opportunity to be heard with respect to the reclassification.

### I.

Section 4 of the Administrative Procedure Act (5 U.S.C. § 553) requires, in general, that notice of proposed rule-making be published in the Federal Register and that interested parties be given an opportunity to be heard. Plaintiffs contend and defendant concedes that the decision to reclassify Rainbow Valley was a "rule" within the meaning of section 4. Assuming *arguendo* that this is so, we nonetheless conclude that the decision was exempted from any rule-making requirements by subsection 4(a)(2), which provides that section 4 shall not apply to "a matter relating to . . . public property, loans, grants, benefits, or contracts."

---

* Honorable Charles L. Powell, Eastern District of Washington sitting by assignment.

The FCIC's decision to reclassify Rainbow Valley relates directly to its crop insurance contracts and thus falls squarely within the public contracts exception. This conclusion is supported not only by the plain language of section 4(a)(2), but by scholarly commentary as well.[1] Moreover, while we have been unable to discover any case directly in point, the reasoning of at least two recent circuit decisions supports the result we reach here (Brown v. Housing Authority of City of Milwaukee (7th Cir. 1972) 471 F.2d 63; Housing Auth. of Omaha, Neb. v. United States Housing Auth. (8th Cir. 1972) 468 F.2d 1).[2]

The practical necessity for the public contracts exception is apparent. It would be altogether unreasonable to require the various agencies of government to publish notice in the Federal Register and to hold hearings each and every time they entered into, rescinded, or canceled a government contract; the burden in time and expense would be extraordinary. Plaintiffs' reliance on the Administrative Procedure Act is misplaced.

## II.

Plaintiffs' alternative contention is that the FCIC's failure to give them prior notice or an opportunity to be heard denied them due process of law. At the outset we note that if the FCIC's decision constitutes rule-making, then the short and simple answer to plaintiffs is that no process was due.[3] Again, however, we need not decide whether the decision constitutes rule-making, for assuming *arguendo* that it does not, plaintiffs' due process argument still must fail.

■ The due process clause, in its procedural as opposed to its substantive aspect, guarantees plaintiffs that their liberty and property interests will not be invaded by the government except insofar as they are given an opportunity to challenge the purported justification (legal, factual, or both) of the invasion. Thus, to make out a prima facie claim that they have been denied due process, plaintiffs must establish two elements: (1) that their liberty or property interests have been invaded by the government without an opportunity to challenge that invasion, and (2) that the purported justification for the invasion is at least plausibly disputable (otherwise an opportunity to challenge that justification would be an empty formality). (*See* Geneva Towers Tenants Organization v. Federal Mortgage Inves-

1. "The 'contracts' exemption clearly has a very wide scope. In addition to General Services Administration rul'-making relating to contracts for the procurement of land, goods, and services, and to construction contracts of all kinds, the exemption applies, as do all of the other (a)(2) exemptions, to reulemaking of that sort by every federal agency. . . . It also extends to regulation making for Department of Agriculture programs such as the . . . Crop Insurance Program . . . ." Bonfield, "Public Participation in Federal Rulemaking Relating to Public Property, Loans, Grants, Benefits or Contracts," 118 U.Pa.L.Rev. 540, 568–69 (1970).

2. *Brown* and *Housing Auth. of Omaha* involved challenges to HUD regulations requiring local housing authorities to institute grievance procedures for their tenants; the regulations were promulgated without compliance with the rule-making requirements of section 4. In each action the court concluded that the regulations, as supplements to

the Annual Contribution Contract between HUD and the local housing authority, effectuated "the government's stewardship over public housing projects which are purchased with public funds" (471 F.2d at 68; 468 F. 2d at 9) and so represented a "proprietary" matter within the public contracts exception of section 4. If the government's "stewardship over public housing projects"—hardly akin to a private, profit-making enterprise —is a proprietary matter within the public contracts exception, then the insurance contract of a gov. rnment corporation which has been directed to operate on a sound business basis clearly comes with the section 4(a)(2) exemption.

3. *See, e. g.*, Joint Anti-Fascist Refugee Comm. v. McGrath (1951) 341 U.S. 123, 167, 71 S.Ct. 624, 95 L.Ed. 817 (Frankfurter, J., concurring); Willapoint Oysters, Inc. v. Ewing (9th Cir. 1949) 174 F.2d 676, 694; Webb v. State Univ. of New York (N.D.N. Y.1954) 125 F.Supp. 910, 912 (A. Hand, C. J.).

tors (9th Cir. 1974) 504 F.2d 483 (Hufstedler, J., dissenting).) In this case plaintiffs have established neither element.

In Board of Regents v. Roth (1972) 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548, the Supreme Court described the kind of property interests protected by the due process clause:

> "To have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." (408 U.S. at 577, 92 S.Ct. at 2709.)

■ Plaintiffs have no "legitimate claim of entitlement." A property interest in citrus insurance can arise from the insurance contract or from the Federal Crop Insurance Act.[4] The contract provided that after the first year either party could cancel the contract by giving written notice prior to August 31. Plaintiffs cannot argue that the contract furnishes them with a claim of entitlement, because by the very terms of the contract, the contract ceases to be legally effective in any fashion after either party has duly canceled it. (*Cf.* Arnett v. Kennedy (1974) 416 U.S. 134, 180, 94 S.Ct. 1633, 40 L.Ed.2d 15.)

■ The Federal Crop Insurance Act does not create a system of statutory benefits; rather, it authorizes the FCIC to make contracts under certain circumstances. Further, the Act explicitly authorizes the FCIC to "limit or refuse insurance in any county or area . . .

on the basis of the insurance risk involved" (7 U.S.C. § 1508(a)). By way of elucidating the FCIC's statutory authority to "limit or refuse insurance," the Committee on Agriculture of the House of Representatives reported:

> "Under circumstances where a loss is imminent or it is impossible to determine the risk or where insurance experience has been so unfavorable as to preclude the possibility of a sound insurance program, the Corporation would be authorized to refuse insurance." H.R.Rep. No. 1592, 78th Cong., 2d Sess. (1944).

■ No property interest of plaintiffs under the Act was invaded. To the contrary, whatever plausible entitlement plaintiff might have had under the Act was subject to a statutory duty on the part of the FCIC to provide "a sound insurance program" (*id.*) and to cancel insurance where the unfavorable nature of the risk involved required it. In reclassifying Rainbow Valley, the FCIC was merely obeying its statutory duty.

Finally, plaintiffs have been unable to show us how the factual justification for the FCIC action was plausibly disputable. They could not have successfully quarreled with the weather or with the heavy losses suffered if they had had a hearing. Weather information supported the decision as did FCIC's loss experience. In the crop year 1970, the first year after cancellation, Rainbow Valley sustained another serious freeze, a fact suggesting that FCIC had done its homework.

Affirmed.

---

4. "Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits." (Board of Regents v. Roth, *supra*, 408 U.S. at 577, 92 S.Ct. at 2709.)