**In the Matter of Betty Ann JOYNER a/k/a Betty Ann Riner Joyner and John William Joyner, Debtors.**

**Betty Ann JOYNER a/k/a Betty Ann Riner Joyner and John William Joyner, Plaintiffs,**

**v.**

**GOLDEN DOME INVESTMENT COMPANY, INC. d/b/a Federal Credit Company, Defendant.**

**Bankruptcy No. 80–00306.**

United States Bankruptcy Court, M. D. Georgia, Macon Division.

Nov. 19, 1980.

Fred H. Hodges, Jr., Macon, Ga., for defendant.

Carl A. Veline, Jr., Warner Robins, Ga., for plaintiff.

H. David Moore, Warner Robins, Ga.

## MEMORANDUM DECISION ON DEBTORS' MOTION TO AVOID LIEN

### STATEMENT OF THE CASE

HENRY D. EVANS, Bankruptcy Judge.

This opinion concerns the motion to avoid the nonpossessory, nonpurchase money security interest in household goods of Golden Dome Investment Company, Inc. d/b/a Federal Credit Company, defendant, by Betty Ann Joyner a/k/a Betty Ann Riner Joyner and John William Joyner, plaintiffs. The action, although treated as an adversary proceeding, is handled as a motion in this Court for clerical reasons. The defendant, in response to the motion, filed its answer alleging in pertinent part that the foundational contract between the parties was entered prior to October 1, 1979 and so is not affected by Section 522(f) of the Bankruptcy Code. The matter came on to be heard on September 26, 1980 at which time the attorney for the defendant attacked Section 522(f) as unconstitutional under the Fifth Amendment of the United States Constitution. The Attorney General was notified of the constitutional challenge pursuant to 28 U.S.C. § 2403, but declined to intervene.

After the presentation of evidence and argument of Counsel, the Court makes the following:

## FINDINGS OF FACT

On February 2, 1977 Betty R. Joyner and John W. Joyner (debtors) borrowed $2,094.20 from Golden Dome Investment Company, Inc. d/b/a Federal Credit Company (defendant) in order to pay off several small debts. In conjunction with the loan of money, the Joyners executed a security agreement giving as collateral to secure the payment of the loan one 1967 Buick Wildcat, one 1974 Chevrolet Nova and, "All household goods located in or about the debtors residence as shown including but not limited to the following: Description of security combined on "Exhibit A" attached hereto and incorporated herein by reference thereto for all purposes." With the exception of a 10′ × 10′ utility shed and two CB radios, all of the items on "Exhibit A" are household furnishings. (A copy of "Exhibit A" is attached hereto.)

On February 22, 1977, a financing statement showing the entire list of goods on "Exhibit A," with the exception of the 10′ × 10′ utility shed, was filed in Houston County Superior Court, thereby perfecting the security interest of the defendants in those goods.

On October 17, 1977, July 28, 1978, February 6, 1979 and September 24, 1979 the Joyners borrowed additional funds from the defendant, each time paying off the balance of the previous loan, taking a cash advance, and refinancing the balance due for a 36 month term. On each occasion of refinancing, the security agreement stated the same collateral as the original agreement with the exception of the Chevrolet Nova (which had been transferred).

By agreement of counsel, there was no contest as to the security interest of the defendant in the Buick Wildcat. It was also agreed that the security interest of the defendant in the household goods of the debtors, which the debtors seek to avoid, is a nonpurchase money, nonpossessory security interest in household goods which have been claimed exempt by the debtor. Although no fair market values of individual items were established, the entire list of goods was valued at little more than $500.00 by testimony of the debtors.

## CONCLUSIONS OF LAW

The only question before the Court is whether the application of 11 U.S.C. § 522(f) to security interests created prior to November 6, 1978 (the date of enactment of the 1978 Bankruptcy Reform Act) is constitutional or not. It is the opinion of this Court that such application is within the proscriptions of the Constitution. An act of Congress comes before this Court with a presumption of constitutionality which must be overcome by any party assailing it. *Usery v. Turner Elkhorn Mining Co.,* 428 U.S. 1, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976). Unless a clear conflict with the Constitution may be shown, a trial court should not deny the constitutionality of such an act, any doubts to be resolved in favor of the statute. *Metropolitan Cas. Ins. Co. v. Brownell,* 294 U.S. 580, 55 S.Ct. 538, 79 L.Ed. 1070 (1935); *Goldblatt v. Hempstead,* 369 U.S. 590, 82 S.Ct. 987, 8 L.Ed.2d 130 (1962).

With the concept above firmly in mind, it is this Court's duty to evaluate Section 522(f) of the Bankruptcy Code, 11 U.S.C. § 522(f), and determine if it runs so far afield of fundamental fairness and justice as to take it out of the acceptable limits of statutory law.

The first step of the analysis will be to determine which, if any, articles, clauses or sections of the constitution or its amendments might affect the applicability of the section to the security interest in the case at hand.

Since Section 522(f) is not penal in nature, the prohibition of ex post facto laws contained in Article I, Section 9, Clause 3 is not applicable to it. Similarly, since the Bankruptcy Code does not contemplate the taking of the interest for use by the public, it does not fit within the final section of the Fifth Amendment prohibiting the taking of private property for public use without just compensation. It is the opinion of this Court that for the taking of property to come within that section it must be the direct or indirect result of an actual appro-

priation of tangible property by the government for public use, in some way depriving the owner of a monetizeable interest in his/her property. The government takes no property for public use pursuant to Section 522(f).

If Section 522(f) runs afoul at all, it is with respect to the clause of the Fifth Amendment prohibiting the deprivation of life, liberty, or property, without due process of law. As explained infra, neither does it violate that portion of the Constitution.

Due process may be divided into two elements. Procedural due process concerns the notice necessary to provide a property owner the opportunity to contest the validity of an action to deprive him of his property and serves the purpose of preventing arbitrary, mistaken, or unfair deprivations. *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). Substantive due process on the other hand demands that laws shall not be unreasonable, arbitrary or capricious, and that they shall have a real and substantial relationship to a permissible legislative objective.

■ While it is true that the exercise of the power to draft laws on the subject of bankruptcies granted to Congress by the Constitution in Article I, Section 8 of that instrument is subject to the strictures of the Fifth Amendment, *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935); the appropriate use of that power by Congress will not be found unconstitutional simply because it upsets previously settled expectations. *Wright v. Union Central L. Ins. Co.*, 304 U.S. 502, 58 S.Ct. 1025, 82 L.Ed. 1490 (1938). In order to show a violation of the procedural aspect of the Fifth Amendment, the defendant must establish that its property interest has been invaded by the government without a meaningful opportunity for it to voice its objection or show the invalidity of the justification of the invasion. *Rainbow Val. Citrus Corp. v. Federal Crop Ins. Corp.*, 506 F.2d 467 (9th Cir. 1974).

■ The defendant was served with notice of the motion to avoid the security interest on July 28, 1980, answered the motion on September 10, 1980 and was heard by the Court on September 28, 1980. There was ample opportunity for the defendant to prove that the security interest involved was purchase money or possessory, that the goods involved were not included in Section 522(f), that the values given the goods by the debtor were incorrect or that the goods involved had not been claimed as exempt by the debtor, any of which proofs would have taken the matter out of the purview of the section. Hence, there was a meaningful opportunity for the defendant to be heard, and no violation of the procedural element of due process.

■ To set out a violation of the substantive element of "Due Process" the defendant must show that the goal of the legislation is impermissible, or that the means chosen for effectuating the stated goal is not reasonably related thereto, or that the law in question is unreasonable, arbitrary and capricious to the point of violating fundamental fairness. *Antonio Roig Sucrs. S. En C. v. Sugar Board of Puerto Rico*, 235 F.2d 347 (1st Cir. 1956).

■ The Constitution itself gives Congress the power to establish " ... uniform Laws on the subject of Bankruptcies throughout the United States ... " and "To make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers ... " (including the power to establish laws on bankruptcy). Article I, Section 8, Clauses 4 and 18, United States Constitution. The development of the laws generated pursuant to those powers has consistently been toward retrieving the honest debtor from oppressive indebtedness and permitting him to start afresh. *Wright v. Union Central Life Ins. Co.*, supra. In order to accomplish the "fresh start" that is the overriding purpose of bankruptcy, two devices are necessary: (1) the ability of Congress through its bankruptcy power to discharge the indebtedness of the debtor, and (2) the ability of the States, and now Congress, to set out property as exempt from judicial process, levy and sale. The preservation of discharge and exempt prop-

erty is so essential to the efficient performance of bankruptcy that an attempt to protect them is without doubt a permissible legislative objective, and the protection of exempt property is the alpha and omega of Section 522(f). Hence, Section 522(f) has as its object a permissible legislative goal, the protection and preservation of a debtor's "fresh start" via reinforcement of the concept of exempt property.

It is easily seen that Section 522(f) is directly related to the accomplishment of the above stated goal. It affects only items that are necessary to the life, health or profession of the debtor and then only to the extent that such items are exempt under law.

It is equally as evidence that it is not arbitrary, capricious or unreasonable because it does not void purchase money interests which have a much closer nexus to the property and a higher priority in bankruptcy, and takes into consideration the probable value of the security interest involved, as well as the probable value of the collateral involved. As a subordinate measure, it seeks to prevent creditors from taking unfair advantage of their awareness of the substantial replacement cost to a beleaguered debtor of such items and of the intimidating strength of a threat predicated upon the seizing of household furnishings difficult to replace. It might be argued that the complete destruction of a specific property right such as the one considered herein is per se a contravention of the Fifth Amendment, *Rodrock v. Security Indus. Bank*, 3 B.R. 629 at 633 (Bkrtcy.1980), but examination of case law in a related area of the same clause, the deprivation of liberty (in which contracts and the right to contract have been included) and relative to takings of property under the "Police Power" show that there is nothing sacrosanct about property or liberty. Any situation concerning a deprivation of either must be viewed in context with the goals of the deprivation, the necessity of the deprivation, the onerous nature of the deprivation (or lack thereof) and the overall equities involved. *Wright v. Union Central Life Ins. Co.,* supra; *Berman v. Parker*, 348 U.S.

26, 75 S.Ct. 98, 99 L.Ed. 27 (1954); *Hirabayashi v. U. S.*, 320 U.S. 81, 63 S.Ct. 1375, 87 L.Ed. 1774 (1943); *Wright v. Vinton Mountain Trust Bank*, 300 U.S. 440, 57 S.Ct. 556, 81 L.Ed. 736 (1937); *Home Bldg. & Loan Asso. v. Blaisdell*, 290 U.S. 398, 54 S.Ct. 231, 78 L.Ed. 413 (1934); *Highland v. Russell Car & Snow Plow Co.*, 279 U.S. 253, 254, 49 S.Ct. 314, 315, 73 L.Ed. 688 (1929). In other words, "the fact that a liberty cannot be inhibited without due process of law does not mean that it can under no circumstances be inhibited." *Zemel v. Rusk*, 381 U.S. 1, 85 S.Ct. 1271, 14 L.Ed.2d 179 (1965). It is the opinion of this Court that the same can be said about a deprivation of property. *Miller v. Schoene*, 276 U.S. 272, 48 S.Ct. 246, 72 L.Ed. 568 (1928); *United States v. Caltex, Inc.*, 344 U.S. 149, 73 S.Ct. 200, 97 L.Ed. 157 (1952); *United States v. Central Eurika Mining Co.*, 357 U.S. 155, 78 S.Ct. 1097, 2 L.Ed.2d 1228 (1958).

This Court believes that Section 522(f) of the Bankruptcy Code is a legitimate exercise of the constitutional power given Congress to create and implement laws concerning bankruptcy. Its application to pre-existing security interest is not arbitrary, capricious, or unreasonable, and its language is directly related to the accomplishment of a permissible legislative object, i. e. the facilitating of a debtor's "fresh start" in bankruptcy through the protection of necessary household, health and professional items which have been claimed as exempt. Such an exercise, even though it does work a minimal deprivation of property in some instances, must be viewed in the context of the overall good that comes from an organized and merciful system of dealing with debtor-creditor relationships in bankruptcy. Viewed in perspective, it is well within the constitutional prohibition of the Fifth Amendment. Accordingly, the debtor herein must be allowed the protection of the section, and the security interest of the defendant must be annulled.