**In re Wanda Ann JENKINS.**

**Wanda Ann JENKINS, Plaintiff,**

**v.**

**NORTHWEST GEORGIA BANK, Defendant.**

**Bankruptcy No. 80–00222R.
Adv. No. 80–0063R.**

United States Bankruptcy Court,
N. D. Georgia,
Atlanta Division.

June 25, 1981.

Marshall M. Bandy, Jr., Ringgold, Ga., for Wanda Ann Jenkins.

Wiggins & Patty, Ringgold, Ga., for Northwest Georgia Bank.

ORDER

HUGH ROBINSON, Bankruptcy Judge.

The plaintiff's "Complaint to Avoid Lien" brought the dispute involved herein before the Court. A pre-trial conference was held on September 12, 1980 at which the parties agreed that this matter would be submitted to the Court for resolution on briefs and a stipulation of facts. Having reviewed the briefs and stipulations submitted by the parties and the pleadings on file, the Court makes the following decision.

FINDINGS OF FACT

The findings of fact are adopted from the stipulation entered into by the parties.

On September 9, 1968 Wanda Ann Jenkins, ("Plaintiff"), executed and delivered a promissory note to Northwest Georgia Bank, ("Defendant"). Plaintiff executed and delivered a second promissory note to Defendant on September 28, 1968. Thereafter Plaintiff defaulted in the payment of said notes, and Defendant brought suit against Plaintiff in the Superior Court of Catoosa County, Georgia. A judgment was obtained by Defendant against Plaintiff and was recorded on the General Execution Docket of Catoosa County on February 6, 1975.

17. Accord, *Malpeli, supra; Pierce, supra.*

In September, 1976 A. T. Peters conveyed a certain parcel of real property located in Catoosa County to Billy Gene Jenkins and Plaintiff. The deed was recorded on September 21, 1976. On June 13, 1977, Plaintiff and Billy Gene Jenkins executed and delivered a security deed on this property to First Tennessee Bank. This security deed was cancelled by First Tennessee Bank on March 15, 1979 and was marked satisfied on the deed records of Catoosa County by the clerk of the Superior Court on March 16, 1979.

On April 23, 1979 Plaintiff and Billy Gene Jenkins executed and delivered a second security deed on the real property to First Tennessee Bank. This deed remains unsatisfied on the deed records of Catoosa County and the present balance of the debt owed to First Tennessee Bank is $21,000.00.

In March of 1980, Plaintiff was divorced from her husband, Billy Jenkins, and in the Judgment for Divorce she was awarded the interest of her husband in the real estate as part of alimony and permanent support.

In April of 1980 Defendant began an advertisement and sale of Wanda Ann Jenkins' one-half interest in the real estate, and the sale was to take place on May 6, 1980. The sale never occurred due to the filing of Plaintiff's bankruptcy petition on May 5, 1980.

In her petition, Plaintiff claimed an exemption of $5,400.00 in her residential real property pursuant to Ga. Code Ann. § 51–1301.1 et seq. The value of the real estate is $27,000.00. Plaintiff commenced the instant adversary proceeding to avoid defendant's lien under 11 U.S.C. § 522(f) on August 11, 1980. The Defendant's lien is in the amount of $9,028.84 as of October 31, 1980.

Defendant contends that the application of 11 U.S.C. § 522(f) to Defendant's judicial lien constitutes a taking of property without due process of law in violation of the Fifth Amendment to the United States Constitution. In accordance with the requirements of 28 U.S.C. § 2403(a) the Court certified to the Attorney General the fact that the constitutionality of an Act of Congress affecting the public interest had been challenged in this proceeding. No attempt to intervene in this action has been made by the Attorney General.

## APPLICABLE LAW

Section 522(f) of the Bankruptcy Code reads:

(f) Notwithstanding any waiver of exemptions, the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—

(1) a judicial lien; or

(2) a nonpossessory, nonpurchase-money security interest in any—

(A) household furnishings, household goods, wearing apparel, appliances, books, animals, crops, musical instruments, or jewelry that are held primarily for the personal, family, or household use of the debtor or a dependent of the debtor;

(B) implements, professional books, or tools, of the trade of the debtor or the trade of a dependent of the debtor; or

(C) professionally prescribed health aids for the debtor or a dependent of the debtor.

The purpose of this provision is to vitiate what Congress perceived to be an unfair advantage held by creditors over debtors. It is said in House Report No. 95–595, 95th Cong., 1st Sess. (1977) at 127, U.S. Code Cong. & Admin. News 1978, pp. 5787, 6088:

Frequently, creditors lending money to a consumer debtor take a security interest in all of the debtor's belongings, and obtain a waiver by the debtor of his exemptions. In most of these cases, the debtor is unaware of the consequences of the forms he signs. The creditor's experience provides him with a substantial advantage. If the debtor encounters financial difficulty, creditors often use threats of repossession of all of the debtor's household goods as a means of obtaining payment.

In fact, were the creditor to carry through on his threat and foreclose on the property, he would receive little, for household goods have little resale value. They are far more valuable to the creditor in the debtor's hands, for they provide a credible basis for the threat, because the replacement costs of the goods are generally high. Thus, creditors rarely repossess, and debtors, ignorant of the creditors' true intentions, are coerced into payments they simply cannot afford to make.

The exemption provision allows the debtor, after bankruptcy has been filed, and creditor collection techniques have been stayed, to undo the consequences of a contract of adhesion, signed in ignorance, by permitting the invalidation of nonpurchase money security interests in household goods. Such security interests have too often been used by over-reaching creditors. The bill eliminates any unfair advantage creditors have. (footnotes omitted).

Defendant contends that the application of Section 522(f) in the instant case amounts to a retroactive taking of property without due process and is therefore unconstitutional.

This particular statutory provision has been the subject of a considerable amount of litigation concerning its constitutionality. Most of the cases deal with nonpossessory, nonpurchase money security interests as opposed to judicial liens. However, the courts have not distinguished between a nonpossessory, nonpurchase money security interest and a judicial lien when dealing with this constitutional issue. Although a judicial lien is not a consensual arrangement, the judicial lienholder does acquire an interest in the debtor's property which is significantly affected by the provisions of 11 U.S.C. § 522(f). Therefore the reasoning in the cases which interpret Section 522(f) as applied to nonpossessory, nonpurchase money security interests should be applicable to cases involving judicial liens.

Some cases have held that the application of Section 522(f) to liens created prior to the date of enactment of the Bankruptcy Reform Act violates the due process clause of the Fifth Amendment. *In re: Rodrock*, 3 B.R. 629, 1 CBC 2d 1022 (Bkrtcy. D.Colo. 1980); *In re: Jackson*, 4 B.R. 293, 2 CBC 2d 91 (Bkrtcy. D.Colo.1980); *In re: Hawley*, 4 B.R. 147, 2 CBC 2d 80 (Bkrtcy D.Or.1980); *In re: Oldham*, 7 B.R. 124, 3 CBC 2d 290 (Bkrtcy. D.N.M.1980). The main authority relied on for this result is *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1593 (1935) reh. denied, 296 U.S. 661, 56 S.Ct. 82, 80 L.Ed. 471 (1935). In this case the United States Supreme Court considered the constitutionality of the Frazier-Lemke Act of June 28, 1934 which amended the Bankruptcy Act of 1898. Under this act a bankrupt farmer who failed to obtain the consents requisite to a composition under Section 75 of the Bankruptcy Act was given certain options with regard to mortgaged property. The debtor could, if the mortgagee assented, purchase the mortgaged property at its then appraised value by agreeing to make certain deferred payments. If the mortgagee refused to assent to such purchase, the debtor could stay all proceedings for a period of five years during which time the debtor could retain possession of the mortgaged property provided reasonable rental was paid annually to the mortgagee. At the end of the five year period, or prior thereto, the debtor could purchase the property by paying into the court the appraised price of the property. It was specifically provided that the Act applied to debts existing at the time the Act became effective. In considering the constitutionality of this Act the Court said:

> "The bankruptcy power, like the other great substantive powers of Congress, is subject to the Fifth Amendment. Under the bankruptcy power Congress may discharge the debtor's personal obligation, because, unlike the States, it is not prohibited from impairing the obligation of contracts. Compare *Mitchell v. Clark*, 110 U.S. 633, 634 [4 S.Ct. 312, 28 L.Ed. 279]. But the effect of the Act here complained of is not the discharge of Radford's personal obligation. It is the

taking of substantive rights in specific property acquired by the Bank prior to the Act. In order to determine whether rights of that nature have been taken, we must ascertain what the mortgagee's rights were before the passage of the Act. We turn, therefore, first to the law of the State". (footnotes omitted).

295 U.S. at 589–590, 55 S.Ct. at 863.

The Court held that the operation of this Act resulted in the taking of a substantive property right without due process of law in violation of the Fifth Amendment.

Other cases have upheld the constitutionality of Section 522(f) as applied to liens created before the enactment of the Bankruptcy Reform Act of 1978. *In re: Ambrose*, 4 B.R. 395, 2 CBC 2d 267 (Bkrtcy. N.D.Ohio 1980); *In re: Curry*, 5 B.R. 282, 2 CBC 2d 710 (Bkrtcy. N.D.Ohio 1980); *In re: Primm*, 6 B.R. 142, 2 CBC 2d 1170 (Bkrtcy. D.Kan.1980); *In re: Joyner*, 7 B.R. 596, 3 CBC 2d 436 (Bkrtcy. M.D.Ga.1980). These courts followed the principles that legislation is presumed constitutional and that a trial court should not declare an Act of Congress unconstitutional unless the conflict with a constitutional provision is clear. In each of the above-cited cases it was generally found that Section 522(f) is addressed to the legitimate end of protecting the debtor's exemptions, his discharge and his fresh start and that the avoidance of liens on certain exempt property is a reasonable and appropriate means to that end.

The Supreme Court's policy with regard to the constitutionality of statutes which affect aspects of our economic life is clearly expressed in *Usery v. Turner Elkhorn Mining Company*, 428 U.S. 1, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976). In that case the Supreme Court upheld the constitutionality of Title IV of the Federal Coal Mine Health and Safety Act of 1969, as amended by the Black Lung Benefits Act of 1972 which provides for benefits to coal miners suffering from black lung disease. Under the Act coal mine operators were required to compensate even those employees who had terminated their work in the industry before the Act was passed and the survivors of such employees. Finding that the Act did not offend the Fifth Amendment Due Process Clause the Court said:

"It is by now well established that legislative Acts adjusting the burdens and benefits of economic life come to the Court with a presumption of constitutionality, and that the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way. See, e. g., *Ferguson v. Skrupa*, 372 U.S. 726 [83 S.Ct. 1028, 10 L.Ed.2d 93] (1963); *Williamson v. Lee Optical Co.*, 348 U.S. 483, 487–488 [75 S.Ct. 461, 464, 99 L.Ed. 563] (1955). And this Court long ago upheld against due process attack the competence of Congress to allocate the interlocking economic rights and duties of employers and employees upon workmen's compensation principles analogous to those enacted here, regardless of contravening arrangements between employer and employee. *New York Central R. Co. v. White*, 243 U.S. 188 [37 S.Ct. 247, 61 L.Ed. 667] (1917); see also *Philadelphia, B. & W. R. Co. v. Schubert*, 224 U.S. 603 [32 S.Ct. 589, 56 L.Ed. 911] (1912).

428 U.S. at 15, 96 S.Ct. at 2892.

In considering the constitutionality of Section 522(f) the Court is mindful of the general rule that a trial court should refrain from declaring an Act of Congress unconstitutional unless its conflict with a constitutional provision is clear. *Thompson v. United States*, 148 F.Supp. 910 (E.D.Pa.1957). After careful consideration the Court concludes that the provisions of Section 522(f) are not clearly repugnant to the Due Process Clause of the Fifth Amendment. This Court agrees with the decisions of those courts which have held that the lien avoidance provided for in Section 522(f) is a reasonable and appropriate means to the legitimate goal of protecting a debtor's exemptions, his discharge and his fresh start. Accordingly, the Court concludes that Defendant has not overcome the presumption of constitutionality with which this statute comes to the Court.

CONCLUSIONS OF LAW

1. The provisions of 11 U.S.C. § 522(f) are not clearly repugnant to the Due Process Clause of the Fifth Amendment. It is therefore

ORDERED that Defendant's judgment lien on Plaintiff's residential real property shall be and same is hereby avoided pursuant to 11 U.S.C. § 522(f) to the extent that said lien impairs Plaintiff's exemption.