**In re David Alan GOLDEN and Barbara Golden, Debtors.**

**David Alan GOLDEN and Barbara Golden, Plaintiffs,**

**v.**

**CITY NATIONAL BANK OF HALLANDALE, Defendant.**

Bankruptcy No. 80–01313–BKC–SMW.
Adv. No. 81–0291–BKC–SMW–A.

United States Bankruptcy Court,
S. D. Florida.

Oct. 14, 1981.

FINDINGS OF FACT AND
CONCLUSIONS OF LAW

SIDNEY M. WEAVER, Bankruptcy Judge.

This Cause having come to be heard upon plaintiffs' Complaint to Avoid a Judicial Lien under 11 U.S.C. Section 522(f) and defendant's Motion to Dismiss filed herein; and the Court, having examined the facts as stipulated to by the parties and having considered the arguments of counsel and being otherwise fully advised in the premises; does hereby make the following findings of fact and conclusions of law:

This Court has jurisdiction of the parties and the subject matter.

The facts are undisputed. A judicial lien was entered on September 15, 1977 on the homestead property of the plaintiffs, David Alan and Barbara Rebekah Golden (the Debtors) in the amount of Twenty-Three

Thousand, Four Hundred Eighty and 42/100 Dollars ($23,480.42) and recorded on October 21, 1977 in Broward County, Florida. The debt owed to the defendant, City National Bank of Hallandale (the Bank) was not a purchase money mortgage. The Debtors filed a petition in bankruptcy on October 8, 1980 under the Bankruptcy Reform Act of 1978. This adversary proceeding was initiated on June 19, 1981 under 11 U.S.C. Section 522(f) to avoid the Bank's judicial lien on Debtors' homestead property. The Debtors allege that the Bank's lien on the Debtors' homestead impairs the exemption to which the Debtors would be entitled. The Bank has responded with a motion to dismiss under F.R.C.P. 12(b)(6) for failure to state a cause of action alleging that the statutory basis of Debtors' petition, Section 522(f), violates the Bank's Fifth Amendment rights.

■ In making an analysis of the constitutionality of any statute, certain presumptions come to bear. Any Congressional Act coming before this Court comes with the presumption of constitutionality. It is the burden of the party challenging the statute to overcome this presumption. *In re Stump*, 8 B.R. 516 (Bkrtcy.1981); *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 96 S.Ct. 2882, 49 L.Ed.2d 752 (1976) [hereinafter cited as *Usery*]. Absent a clear showing of a violation of a constitutionally protected right or privilege, a trial court should resolve any question of constitutionality in favor of the Act. *Goldblatt v. Hempstead*, 369 U.S. 590, 82 S.Ct. 987, 8 L.Ed.2d 130 (1962). The Court proceeds with its analysis of the Bank's Fifth Amendment assertions against this background of the presumptive constitutionality of 11 U.S.C. 522(f).

The Bank's Fifth Amendment challenge raises three basic issues: (1) whether Section 522(f) involves a taking of private property for public purposes without just compensation; (2) whether retroactive application of Section 522(f) involves a deprivation of property without procedural due process and (3) whether Section 522(f) violates substantive due process. *In re Pillow*, 8 B.R. 404 (Bkrtcy.D.Utah, 1981).

■ In order for Section 522(f) to fall under the "taking" provision of the Fifth Amendment, it is necessary that the taking of property must be the direct or indirect result of an actual appropriation of property "by the government for public use." *Matter of Joyner*, 7 B.R. 596 (Bkrtcy.M.D. Georgia 1980) [hereinafter referred to as *Matter of Joyner*]. While there may be an appropriation of property involved in the facts presented here, it is not appropriated for public use. It is the opinion of the Court that the avoidance of a pre-enactment judicial lien under Section 522(f), while possibly depriving the Bank of an interest in property, is not the type of "taking" prohibited by the Fifth Amendment.

■ It is questionable whether the interest involved here is actually a property interest. In two unreported cases with similar facts and applicable state law, the Bankruptcy Courts have recently held that a judgment lien is merely a remedy which does not vest as a property right until execution on the property is made. *In re Lattimore, Debtor: Lattimore, Movant v. Walt's Tree Service, Inc., Respondent*, 12 B.R. 97, Bkrtcy.W.D.N.Y.1981. *In re Charles E. Ashe and Susan J. Ashe, Debtors: The Commonwealth National Bank, Objector, United States of America, Intervenor*, BK No. 1–79–00882, B.C.M.D. Pa. June, 1981. Under Florida law, a judgment lien places a cloud on the title of the property in question and gives the lien holder the right to execute on the property. Judgment liens are not effective against homestead property which under Article 10 Section 4 of the Florida Constitution is exempt from execution by creditors. Under Florida Statute 55.081, a judgment lien not executed upon within twenty years will expire. Unless the property in question loses its homestead character through sale or change in family circumstances within that twenty year period, the creditor has no recourse against that property. In the case at hand, the Bank had not attempted execution against the homestead property of the Debtors in the three years between perfect-

ing its judgment lien and the filing of the bankruptcy petition, being well aware of the futility of such an attempt. If the Bank has a vested property right under these facts, it is not something substantial or easily valued. Assuming though, that the Debtors are being deprived of a property right, it is necessary to determine whether such deprivation is the kind prohibited by the Fifth Amendment due process clause.

 The due process issue consists of two elements, procedural and substantive due process. Procedural due process concerns the notice necessary to provide a property owner an opportunity to contest the validity of an action to deprive him of his property and serves the purpose of preventing arbitrary or unfair deprivations. *Fuentes v. Shevin*, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972). The test for substantive due process, on the other hand, is whether the challenged act is "unreasonable, arbitrary or capricious and (whether it has) a real and substantial relationship to a permissible legislative objective." *Matter of Joyner*. To prove a Fifth Amendment procedural due process violation, the Bank must show that its property right in the judicial lien is being invaded without an opportunity to object or contest the matter in Court. *Rainbow Valley Citrus Corp. v. Federal Crop. Insurance Corp.*, 506 F.2d 467 (9th Cir. 1974). The Court finds that the Bank has had ample opportunity to be heard in this matter. Notice of this action to avoid the Bank's judicial lien was filed on June 22, 1981; a motion to dismiss was filed by the Bank on July 28, 1981 and the Court heard oral argument on August 5, 1981. The Court finds no violation of procedural due process in this matter.

The retroactive application of a law raises the issue of whether creditors had "notice" of the law when credit was given to the Debtors. The Bank argues that it is the *retroactive* avoidance of a judicial lien which vested prior to the enactment of the Bankruptcy Code of 1978 which is unconstitutional. It is widely recognized that bankruptcy legislation is the subject of broad, express constitutional power. This bankruptcy power is inherently retroactive in that it "necessarily ... impairs the obligation of contracts" which may have been entered into prior to filing bankruptcy. *In re Prima Co.*, 88 F.2d 785, 788 (7th Cir. 1937).

All parties to a contract are, of necessity, aware of the existence of, and subject to, the power of Congress to legislate on the subject of bankrupties. They were and are chargeable with knowledge that their rights and remedies, in case the debtor becomes insolvent and is adjudicated a bankrupt, are effected by existing bankruptcy laws and all future lawful bankruptcy legislation which might be enacted... Another unavoidable conclusion is that all contracts are made with the knowledge that existing laws may be amended. [Id.]

The *Prima* court recognized that Congress intended that the Bankruptcy Code, and the Bankruptcy Courts, could alter priorities and vested rights among creditors, and that this effect was constitutional.

Historically, bankruptcy statutes have effected rights which predate their enactment. In *Hanover National Bank v. Moyses*, 186 U.S. 181, 22 S.Ct. 857, 46 L.Ed. 1113 (1902), [hereinafter cited as *Hanover National Bank*] decided soon after the enactment of The Bankruptcy Act of 1898, the Court found that certain provisions of that act under which the defendants were discharged from an 1892 pre-enactment judgment debt, were constitutional. The Court reiterated its position on the application of bankruptcy legislation to pre-enactment vested rights in *Wright v. Vinton Branch of the Mountain Trust Bank of Roanoke*, 300 U.S. 440, 57 S.Ct. 556, 81 L.Ed. 736 (1937) [hereinafter referred to as *Wright v. Vinton Branch*] where it upheld the constitutionality of the application of the Bankruptcy Act amendments in the Frazier-Lemke Act which provided for a foreclosure moratorium in bankruptcy on pre-enactment liens.

 A close examination of the legislative history and statutory language of the Bankruptcy Code of 1978 evidences Congressional intent to follow the traditional

application of bankruptcy law to pre-enactment rights. It has been held that the Bankruptcy Code should not be construed to create a legislative gap. *Wisconsin Higher Education Aids Board v. Lipke*, 630 F.2d 1225 (7th Cir. 1980). If the Bank's argument is given credence, there would be no bankruptcy law governing transactions which occurred prior to the enactment of the Bankruptcy Reform Act of 1978 which, of necessity, would be the substance of any petition filed immediately after the effective date of the new law. Congress contemplated this possibility when it carefully drafted the repeal, the savings and the effective date provisions of the new law. Sections 401 and 402 of the Bankruptcy Code of 1978 repeal the prior Bankruptcy Act effective October 1, 1979, except to the extent that the savings provision, Section 403, provides that cases commenced under the Act shall continue under the Act. However, Section 403 does not save *transactions* which arose under the old law. It is obvious that in drafting the Bankruptcy Reform Act of 1978, Congress intended to apply the new law to previously accrued debts which would become the subject of a petition for discharge filed after October 1, 1978. Otherwise, it would be a number of years before a debtor could bring newly accrued debts to be discharged by the Bankruptcy Court and Congress should have created a gap in the constitutionally mandated law. The Court finds that Congress did not intend to leave a "gap" in the law, and the Bankruptcy Code should not be so construed.

The issue of substantive due process focuses on whether the law in question is arbitrary and unreasonable or unrelated to a rational legislative purpose. The due process standard to be applied to a Congressional enactment in the field of bankruptcy was defined in *Hanover National Bank*, 186 U.S. at 192, 22 S.Ct. at 862 in these terms: "Congress may prescribe any regulations concerning discharge in bankruptcy that are not so grossly unreasonable as to be incompatible with fundamental law." In *Usery* the United States Supreme Court, in a non-bankruptcy case effecting modification of pre-enactment contract rights, pronounced the current standard for substantive due process challenges:

It is by now well established that Legislative Acts adjusting the burdens and benefits of economic life come to the Court with a presumption of constitutionality, and that the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way. *Usery*, 428 U.S. at 15, 96 S.Ct. at 2882.

The Bank has failed to prove that the Bankruptcy Code's adjustment of the "burdens and benefits" in this case is unreasonable or arbitrary. In its Memorandum of Law, the Bank urges on the Court a different standard of proof relying heavily on the recent Tenth Circuit decision in *Rodrock v. Security Industrial Bank, Inc.*, 642 F.2d 1193 (1981) which held that a retroactive application of 11 U.S.C. Section 522(f) was unconstitutional because it violated Fifth Amendment due process standards. The Court has carefully considered the *Rodrock* case but finds it distinguishable based as it is on the Supreme Court's depression era decision in *Louisville Joint Stock Land Bank v. Radford*, 295 U.S. 555, 55 S.Ct. 854, 79 L.Ed. 1238 (1935) [hereinafter cited as *Radford*], a decision from which the Court itself immediately receded and subsequently limited drastically. That the Supreme Court has departed from this earlier substantive due process standard pronounced in *Radford* is evidenced by its later decisions effecting economic legislation generally and bankruptcy legislation in particular. *Hanover National Bank* (1902); *Wright v. Vinton Branch* (1937); *Wright v. Union Central Life Ins. Co.*, 304 U.S. 502 (1938); *Usery* (1976). A close reading of *Radford* reveals important distinctions between the factual basis of the Court's decision and the facts surrounding the judicial lien on the Debtors' property at issue here. Firstly, *Radford* involved mortgaged property which was *not* claimed as homestead, thus the *Radford* Court was not presented with a constitutional challenge to Congressional actions designed to preserve Debtors' exemptions.

More importantly, the *Radford* decision involved a security interest in property which could be reached by execution and thus had substantial value. It was only the transferring of rights of "*substantial* value" that the *Radford* Court condemned (emphasis added). Under Florida homestead exemption law, prohibiting execution by creditors against a debtor's homestead property, the Bank's judicial lien lacks "substantial value" and would fall outside the parameters of the *Radford/Rodrock* logic.

 The provisions of Section 522(f) are designed to protect the debtor's fresh start by exempting those necessities which would encourage a successful economic recovery to the extent that these items are exempt under state law. The Court finds that these are proper ends to be attained under Congressional power over bankruptcies, and that the provisions of Section 522(f) are rationally related to those ends. These provisions are not arbitrary when they shift the burden from debtors, who need their homestead property to maintain themselves, to creditors who have profited from those loans in the past, who calculate the risk factor into their interest rate charges and who can, in addition, offset the burden imposed by writing off the debt. To hold that these provisions providing for the avoidance of certain, specific liens is unconstitutional would impair the exemptions intended by Congress and undermine the policy, and the traditional effect, of bankruptcy law.

The Fifth Amendment challenge to 11 U.S.C. Section 522(f) presented here is not well taken. The fact that a person or legal entity cannot be deprived of property without due process does not mean that one cannot be deprived of property at all. There is a deprivation of property in any bankruptcy action whereby a creditor is not paid the entire amount of its claim. The Court finds that, while there may be some deprivation of property involved in the avoidance of the Bank's judicial lien, due process constraints have not been violated. The 11 U.S.C. Section 522(f) has sufficient procedural requirements built in whereby a creditor's due process rights are protected. The Court finds further that Section 522(f) bears a rational relationship to the permissible legislative purpose of giving the Debtors a "fresh start" by protecting through specific enumerated exemptions, the basic necessities of life, such as the Debtors' home.

In accordance with the foregoing, the Bank's Motion to Dismiss the Debtors' Complaint will be denied and Debtors' Complaint for Avoidance of Judicial Lien under 11 U.S.C. Section 522(f) will be granted.

A judgment will be entered in accordance with these findings and conclusions.