In the Matter of NATIONAL SHOES, INC., et al., Debtor.

Nathan CHERA, Plaintiff,

v.

991 BOULEVARD REALTY CORP. and National Shoes, Inc., et al., Defendants.

Bankruptcy No. 80–B–12136.
Adv. No. 81–5338.

United States Bankruptcy Court, S. D. New York.

May 14, 1982.

**56**

Leinwand, Maron, Hendler & Krause, New York City, for debtor; Robert R. Leinwand, New York City, of counsel.

Schekter, Aber, Rishty, Goldstein & Schechter, P. C., New York City, for plaintiff; Asher Fensterheim and Donald S. Hillman, New York City, of counsel.

## OPINION

ROY BABITT, Bankruptcy Judge:

This opinion deals with separate proceedings both of which go to the reach of portions of Section 365 of the 1978 Bankruptcy Code, 11 U.S.C. (1976 ed. Supp. IV) § 365,[1] insofar as these sections impact on National Shoes, Inc., a well known retailer of ladies' shoes, now a debtor here seeking the relief given by Chapter 11 of the Code, Sections 1101 *et seq.*

The Chapter 11 petition was filed on December 11, 1980. This event made the debtor a debtor in possession, Section 1101(1), and as such it continued its business from, among several other locations, the premises at 991–993 Southern Boulevard in the

Bronx, New York, under a lease the last extension of which is through April 30, 1996.

When the debtor refused to vacate in accordance with its landlord's election to terminate the lease "upon the grounds that a petition in bankruptcy has been filed by you", the latter filed a complaint seeking a declaratory judgment that the lease was at an end and that return of the premises was mandated by, among other things, the Constitution.[2]

Determined not to be ousted from a desirable business location under a monetarily favorable lease, the debtor counterattacked. In swift order the debtor (1) answered the landlord's complaint in which several portions of Section 365 were raised as defenses, (2) moved for an order approving assumption of the lease pursuant to Section 365(b) of the Code, and (3) moved for an order dismissing the complaint for failure to state a claim.

The controlling facts appear not to be in dispute and are these: the debtor's landlord acquired title just three days before the Chapter 11 petition was filed. He took title subject to the lease originally entered into in 1947 between the debtor's wholly owned subsidiary, the 991 Boulevard Realty Corp. and his own predecessors in interest, and extended through April, 1996. Paragraph 18 of the lease, insofar as relevant to this dispute and to the landlord's claim that Section 365(e)(1) is unconstitutional, says that:

"... if the tenant *shall file a petition in bankruptcy* or be adjudicated a bankrupt or make an assignment for the benefit of creditors or take advantage of any insolvency act ... the landlord may, if the landlord so elects, at any time thereafter, to terminate this lease ...". (emphasis added)

### I. *Constitutionality*

Section 365(e)(1) reads as follows:

---

1. Unless otherwise indicated, all citations are to the 1978 Bankruptcy Reform Act (Code) or the section as carried in Title 11 of the United States Code, 1976 edition, Supplement IV.

2. Letter of March 13, 1981, annexed as Exhibit C, to the landlord's complaint.

"Notwithstanding a provision in an executory contract or unexpired lease, or in applicable law, an executory contract or unexpired lease of the debtor may not be terminated or modified ... solely because of a provision in such contract or lease that is conditioned on the insolvency or financial condition of the debtor ...".

This section shows Congress' mood to depart from that part of Section 70(b) of the now repealed 1898 Act, 11 U.S.C. (1976 ed.) § 110(b), which made enforceable in bankruptcy an express termination covenant based on the bankruptcy of either party. The landlord seizes on the chronology of the controlling events as already recounted and insists that the application of Section 365(e)(1) to those events is constitutionally infirm as an impermissibly retroactive taking.[3]

In enacting Section 365(e)(1) in 1978 as an exercise of its bankruptcy power, *Hanover Bank v. Moyses*, 186 U.S. 181, 22 S.Ct. 857, 46 L.Ed. 1113 (1902), Congress not only withdrew the rigors of Section 70(b) of the 1898 Act but it also placed its own seal of benediction on the actions by then taken by many judges to relieve those rigors where strict application would chill a debtor's rehabilitation. See, *e.g., In re Fontainebleau Hotel Corp.*, 515 F.2d 913 (5th Cir. 1975); *Queens Boulevard Wine & Liquor Corp. v. Blum*, 503 F.2d 202, 205 (2d Cir. 1974); *In re M & M Transportation Co.*, 437 F.Supp. 821, 822 (S.D.N.Y.1977). See also *Finn v. Meighan*, 325 U.S. 300, 301, 65 S.Ct. 1147, 1148, 89 L.Ed. 1624 (1945). That Section 365(e)(1) of the Code was meant to achieve what its words insist upon is clear from the comments showing Congress' purposeful desire to render unenforceable *ipso facto* termination clauses. Both chambers of the national legislature explained in identical words that:

"Subsection (e) (of Section 365) invalidates ipso factor or bankruptcy clauses. These clauses, protected under present law, automatically terminate the contract or lease, or permit the other contracting party to terminate the contract or lease, in the event of bankruptcy. This frequently hampers rehabilitation efforts. If the trustee may assume or assign the contract under the limitations imposed by the remainder of the section, then the contract or lease may be utilized to assist in the debtor's rehabilitation or liquidation". (Matter in parenthesis added for clarity)

Sen.Rep. 95–989, 95th Cong., 2d Sess. (1978) at 59; House Rep. 95–595, 95th Cong., 1st Sess. (1977) at 348, U.S.Code Cong. & Admin.News 1978, p. 5787.

Simply stated, the landlord here cannot overcome the presumption of constitutionality carried by a statute which adjusts the burdens and benefits of economic life within a broad grant of power to achieve change. *Usery v. Turner Elkhorn Mining Co.*, 428 U.S. 1, 96 S.Ct. 2882, 49 L.Ed.2d 752

---

**3.** The United States Attorney General was informed of this constitutional challenge pursuant to 28 U.S.C. § 2403. After a review of the plaintiff's complaint, the Attorney General declined the invitation to intervene as the arguments raised by the plaintiff had been thoroughly discussed and disposed of in *In re Sapolin Paints*, 2 C.B.C.2d 854, 6 BCD 776, 5 B.R. 412 (Bkrtcy.E.D.N.Y.1980). (Letter of September 25, 1981).

A small ambiguity in the record concerns the date when the debtor's landlord took title. Paragraph 8 of the complaint alleges that he acquired title on or about December 8, 1980. However, the debtor seems to have received a letter dated February 19, 1981 from the seller's attorney advising that the premises had been sold on January 22, 1981.

In this court's view, the landlord's constitutional challenge is turned aside whether he took title before the debtor filed its Chapter 11 petition or after, for in either event, he is charged with knowledge of Section 365(e)(1) and indeed of the entire Code which by December, 1980 had been in effect for over a year. The 1978 statute, Pub.L. 95–598, 92 Stat. 2549 *et seq.*, became effective on October 1, 1979 by the force of Section 402(a) of Title IV, 92 Stat. 2682. The 1898 Act was repealed by Section 401(a) and its Section 70(b) could no longer comfort the debtor's landlord even if the 1978 Code's Section 365(e)(1) could not be applied on the facts here.

What is clear, on the other hand, is that the lease here involved was "subject to all valid legislation which Congress may enact pursuant to the grant of power appearing in Article I, Section 8". *In re Prima Co.*, 88 F.2d 785 (7th Cir. 1937).

(1976). And that presumption is even stronger where, as here, Section 365(e)(1) is part of "a carefully matured enactment", *Guessefeldt v. McGrath*, 342 U.S. 308, 319, 72 S.Ct. 338, 344, 96 L.Ed. 342 (1952), which emerged only after an extensive process of Congressional inclusion and exclusion.[4] The breadth of Section 365(e)(1) and what it achieves reflects not only a rational exercise of Congress' power, *cf.*, *Kuehner v. Irving Trust Co.*, 299 U.S. 445, 57 S.Ct. 298, 81 L.Ed. 340 (1937), but it is also "vital to Congress' mission", *Powell v. U. S. Cartridge Co.*, 339 U.S. 497, 516, 70 S.Ct. 755, 765, 94 L.Ed. 1017 (1950). It enacts a sensible formula upon which "opposing social and political forces have come to rest". *Wong Yang Sung v. McGrath*, 339 U.S. 33, 40–41, 70 S.Ct. 445, 449, 94 L.Ed. 616 (1950).

■ *In re Sapolin Paints, Inc.*, 2 C.B.C.2d 854, 6 B.C.D. 776, 5 B.R. 412 (Bkrtcy.E.D.N.Y.1980), contains a thorough discussion of this issue. There, as here, the "challenge to constitutionality rests on the premise that the right to terminate a lease is a property right which cannot be destroyed without violating the Fifth Amendment's prohibition on the taking of property without due process of law". *Id.*, at 867, 6 B.C.D. 782, 5 B.R. 423. In rejecting the premise, Bankruptcy Judge Goetz held that:

"in refusing to let such consequences (forfeiture) attach to the mere filing of a petition for relief under the bankruptcy laws, and by laying down as a rule of law that a landlord who is otherwise receiving and will receive, full performance under his lease, may not declare a forfeiture, Congress has not exceeded its Constitutional powers".

*Id.*, at 868, 6 B.C.D. 783, 5 B.R. 423–4. This court can add nothing to Judge Goetz' felicitous phrasing. And, as Congress has defined the protections afforded the nondebtor party, see II, *infra*, any due process

challenge to Section 365(e)(1) must fail. See *Matlock Truck Body & Trailer Corp. v. Steinberg*, 6 B.P. 730, 6 B.C.D. 1144, 6 B.R. 730 (Bkrtcy.E.D.Tenn.1980).

■■ There remains the plaintiff's challenge to his so-called retroactive application of Section 365. A careful reading of the 1978 bankruptcy legislation reveals that Congress intended the Code to have retroactive effect since a contrary holding would leave an inexplicable and unacceptable gap in the law. The effective date of the Code was October 1, 1979. Section 402(a) of Title IV, 92 Stat. 2682. Section 401(a) provides that as of October 1, 1979, the 1898 Bankruptcy Act was repealed. 92 Stat. 2682. A case commenced before the October 1, 1979 effective date is governed by the old law. Section 403, 92 Stat. 2603. These operative sections, so carefully worked out show that Congress indeed contemplated retroactive application. It is thus plain that Congress understood that cases commenced on and after October 1, 1979 might under the Code necessarily have to touch interests in place before the effective date, and perhaps even before the November 6, 1978 enactment date. This Congress could do. If the Code does not apply to interests created pre-enactment and the 1898 Act is repealed, no law would govern these transactions. Congress could not have intended such a result. See *Rodrock v. Security Industrial Bank*, 642 F.2d 1193 (10th Cir. 1981); prob. juris. noted, —— U.S. ——, 102 S.Ct. 969, 71 L.Ed.2d 108 (1981); *In re Rapp*, 16 B.R. 575, Bankr.L.Rep. (CCH), ¶ 68,566 (Bkrtcy.S.D. Fla.1981). But this is all by the way for it is plain that this landlord acquired rights in the lease long after Section 365(e)(1) warned him and those like him that Congress had written new rules to govern the relationship of landlord-tenant on the coming of a tenant's bankruptcy.[5]

---

4. See 1 *Collier on Bankruptcy* (15th ed.) ¶ 1.01 03 for a review of the legislative process which culminated in the enactment of the 1978 statute.

5. It bears repeating that:

1. The Code was enacted on November 6, 1978.
2. The Code became operative on October 1, 1979.
3. The 1898 Act was repealed as of October 1, 1979.

## II. *Assumption*

In denouncing *ipso facto* termination clauses by Section 365(e)(1), Congress meant to foster the process by which a trustee or a Chapter 11 debtor in possession[6] could assume a lease so that it could "be utilized to assist in the debtor's rehabilitation or liquidation". Sen.Rep. 95–989, *supra*, at 59; House Rep. 95–595, *supra*, at 348, U.S.Code Cong. & Admin.News 1978, pp. 5845, 6304.

Thus Section 365(a) provides the authority for the assumption of an unexpired lease or other executory contract. And Section 365(f) even authorizes a change in relationship by permitting the assignment of a debtor's lease. All this is further evidence of Congress' purpose. But it is also clear that Congress was not unmindful of the rights of non-debtors and it structured Section 365 to protect such interests. Where assumption by the debtor is contemplated, Section 365(b)(1) expressly requires that either the debtor's defaults be cured or adequate assurance of a prompt cure be given, and that compensation or adequate assurance of compensation and adequate assurance of future performance be demonstrated before assumption of an executory contract. If the trustee or debtor in possession is to assume an executory contract or unexpired lease, the court must insure that the future performance under the contract or lease gives the other contracting party the full benefit of the bargain. Sen.Rep. 95–989, *supra*, at 59; House Rep. 95–595, *supra*, at 349.

To be sure, the debtor here was ten days late in its rental payment at the filing of the petition. This arrearage has been cured.[7] And wisely the landlord refrains from resting termination on what is a technical, now cured default. The landlord knows that he suffered no loss or hardship. On the other hand, his right to receive future rental payments remains undisturbed. This court would not, on the basis of this modest, technical default, permit the windfall that the landlord senses.

■ As the debtor has cured all prepetition defaults[8] and the landlord has asserted no pecuniary loss, the only issue before the court is whether the debtor has demonstrated "adequate assurance of future performance under the lease". Section 365(b)(1)(C). Adequate assurance of future performance is a new concept, and what constitutes adequate assurance is to be determined on a case by case basis to insure that the landlord gets the benefit of the bargain for which he has contracted. But he is not entitled to greater rights than are given by the lease. *In re Lafayette Radio Electronics Corp.*, 4 C.B.C.2d 220, 9 B.R. 993 (Bkrtcy. E.D.N.Y.1981).

■ The debtor has demonstrated its ability and its intention to retain the store and thereby to perform the terms and conditions in the lease. Since the filing of the petition, it has kept current on its pecuniary obligations. This court is satisfied that the conditions of Section 365(b)(1) have been met.

In light of all this, the debtor's motion to dismiss the landlord's complaint is granted, as is its motion to assume the lease which is the subject of this opinion.

Submit order with appropriate findings of what Section 365(b)(1) insists upon as a condition of assumption, in light of what the court finds to be purely a technical, harmless, short-lived default.

---

4.  The landlord became the owner of the Bronx property on December 8, 1980 at the earliest.

5.  The debtor filed its petition on December 11, 1980.

6.  Section 1107(a) gives the Chapter 11 debtor in possession the rights and powers of a trustee in a Chapter 7 liquidation case. The provisions of Section 365, a part of Chapter 3 of the Code, apply equally in a Chapter 7 liquidation or a Chapter 11 reorganization. Section 103(a) insists that this be so.

7.  See transcript of July 30, 1981 hearing, p. 17.

8.  A mechanics lien asserted by the Metropolitan Water Corp. and back salary payments to 991 Boulevard Realty employees were both paid in full. A ten day rent arrearage has been paid to plaintiff. See *fn. 7, supra.*