**In re SAMBO'S RESTAURANTS, INC., Debtor.**

**Bankruptcy No. 81–15593(CA).**

United States Bankruptcy Court, C.D. California.

Nov. 19, 1982.

Louis W. Levit, Levit & Miller, Ltd., Chicago, Ill., Mary Ellen Baldridge, Coskey, Coskey & Boxer, Los Angeles, Cal., for Net Realty Trust.

Isaac M. Pachulski and George C. Webster, II, Stutman, Treister & Glatt, Los Angeles, Cal., for Sambo's Restaurants, Inc.

## MEMORANDUM OF DECISION

CALVIN K. ASHLAND, Bankruptcy Judge.

Net Realty Trust (Net) is the lessor under the separate leases for ten separate locations which Sambo's Restaurants, Inc. (SRI) used for restaurant operations. Before this Chapter 11 case was filed, SRI closed two locations. It continues to operate eight locations and pays the rental and other charges due under the leases on those locations on a timely basis.

The Net leases provide that a default under one lease is a default under all leases. Net asserts that SRI as debtor in possession, cannot assume and assign any of the Net leases without assuming all the Net leases and, in doing so, curing all defaults under all the Net leases. Otherwise, Net asserts SRI must reject all the Net leases, not just the leases on the two closed locations which SRI wishes to reject.

Net filed an objection to the assumption and assignment of one lease. Subsequent to that objection, SRI withdrew its proposed sale and assumption and assignment. Nevertheless; the issue raised in Net's objection remains vital to SRI. Net also filed an application for an order directing SRI to assume or reject the ten leases.

## ISSUES

Two issues are raised by Net in the objection and application:

1. Whether § 365 of the Bankruptcy Code can constitutionally apply to the Net leases since they were executed before the effective date of the Bankruptcy Code.

2. Whether the cross-default provisions are enforceable.

I conclude that § 365 can constitutionally apply to the Net leases and that the cross-default provisions are not enforceable.

■ With regard to the first issue presented in this case, whether there should be retroactive application of § 365, case law and legislative history support retroactive application.

In the *Matter of National Shoes, Inc.,* 20 B.R. 55 (S.D.N.Y.1982), the bankruptcy court held that § 365 was intended to have retroactive effect.

There remains the plaintiff's challenge to his so-called retroactive application of Section 365. A careful reading of the 1978 bankruptcy legislation reveals that Congress intended the Code to have retroactive effect since a contrary holding would leave an inexplicable and unacceptable gap in the law. The effective date of the Code was October 1, 1979. Section 402(a) of Title IV, 92 Stat. 2682. Section 401(a) provides that as of October 1, 1979, the 1989 Bankruptcy Act was repealed. 92 Stat 2682. A case commenced before the October 1, 1979 effective date is governed by the old law. Section 403, 92 Stat. 2603. These operative sections, so carefully worked out show that Congress indeed contemplated retroactive application. It is thus plain that Congress understood that cases commenced on and after October 1, 1979 might under the Code necessarily have to touch interests in place before the effective date, and perhaps even before the November 6, 1978 enactment date. This Congress could do. If the Code does not apply to interests created preenactment and the 1898 Act is repealed, no law would govern these transactions. Congress could not have intended such a result. *See Rodrock*

*v. Security Industrial Bank,* 642 F.2d 1193 (10th Cir.1981); prob. juris. noted, 454 U.S. 1122, 102 S.Ct. 969, 71 L.Ed.2d 108 (1981); *In re Rapp,* 16 B.R. 575, Bankr.L. Rep. (CCH), ¶ 68,566 (Bkrtcy.S.D.Fla. 1981).

20 B.R. at 58.

It is clear that the combined effect of §§ 401 and 402(a) of the 1978 Act is to make the provisions in the 1978 Act the only substantive law in cases filed after October 1, 1979. Section 402(a) states that "[e]xcept as otherwise provided in [Title VII], this Act shall take effect on October 1, 1979." Because Title VII makes no exception for § 365, it applies to all cases filed after October 1, 1979. SRI filed for protection under the bankruptcy laws in November, 1981. Hence, § 365 is controlling. Cf. *Matter of Gifford,* 688 F.2d 447 (7th Cir. 1982).

Section 365 is applicable to the Net leases. The fact that the leases were executed prior to the effective date of the 1978 Act is irrelevant. As pointed out in *National Shoes, supra,* if § 365 is not applicable there would be a "gap" in the law because the old law, the 1898 Bankruptcy Act, has been repealed. 92 Stat. 2682. Congress surely did not intend for there to be gaps in the law when it enacted the 1978 Act.

In the context of § 522(f), there are many cases finding that Congress intended retroactive effect of the substantive provisions of the 1978 Act. *See, e.g., Rodrock v. Security Industrial Bank,* 642 F.2d 1193 (10th Cir.1981), prob. juris. noted, 454 U.S. 1122, 102 S.Ct. 969, 71 L.Ed.2d 108 (1981); *In re Webber,* 674 F.2d 796 (9th Cir.1982); *In re DeBose,* 16 B.R. 881 (9th Cir. BAP 1982); *Matter of Gifford, supra. See generally In re Sapolin Paints, Inc.,* 5 B.R. 412, 421–24 (E.D.N.Y.1980).

■ Net asserts no property rights. It cites cases in which lien rights are being affected, but Net itself asserts no lien rights. What is here involved is the power of SRI to reject an executory lease under § 365. The Constitution does not forbid the impairment of the obligation of a contract right, only a property interest. *See In re Webber, supra.* The modification of Net's contract rights by § 365 is different than the elimination of a lien under § 522(f).

The 9th Circuit has said that the fact that a court decision impacts upon property rights by altering contract rights is not in itself impermissible.

> [I]t has long been recognized that '[b]ankruptcy proceedings constantly modify and affect the property rights established by state law.' *Wright v. Union Central Life Ins. Co.,* 304 U.S. 502, 517 58 S.Ct. 1025, 1033, 82 L.Ed. 1490 (1938). The power given Congress by Article I, section 8, of the Constitution to establish uniform laws relative to bankruptcy gives it broad latitude to affect both contract and property rights. *Wright v. Union Central Life Ins. Co., supra.*

*In re Huntington, Ltd.,* 654 F.2d 578, 590 (1981).

■ The cross-default provisions are unenforceable for several reasons. First, the limitations on the ability to assume and assign are found only in § 365(c). Any contractual restriction on assignment other than those specified in § 365(c) is proscribed by § 365(f).

Secondly, § 365(e)(1)(A) renders ineffective any contractual provision conditioned upon the financial condition of the debtor. The cross-default provisions operate as financial condition clauses. The inability to perform under one lease is indicative of SRI's financial problems. A treatise suggests cross-default provisions as an artful device for precluding assumption. 4 *Collier Bankruptcy Practice Guide,* ¶ 68.06[9] at page 68–47 (1981). But, the suggestion is not authority for the strategy. *See In re U.L. Radio Corp.,* 19 B.R. 537, 8 B.C.D. 1273 (Bkrtcy.S.D.N.Y.1982) (the court refused to enforce a use clause); *In re Boogaart of Florida, Inc.,* 17 B.R. 480 (S.D.Fla.1981) (the court refused to enforce a requirement that certain leases and contracts continue in force); *In re Huntington, Ltd., supra* (the court refused to enforce an anti-hypothecation clause).

Lastly, the cross-default provisions would circumvent the limit set by § 502(b)(7) as to damages a lessor may claim for a terminated lease. A cure of all defaults on all leases as a condition to assumption of any lease could put the lessor in a position of recovering an amount in excess of that allowed by statute. This is similar to the effort to provide in a separate contract for all damages incurred by rejection of a lease. *See Fisher v. Lee Bros. Value World, Inc.*, 486 F.2d 1037 (9th Cir.1973); *Oldden v. Tonto Realty Corporation*, 143 F.2d 916 (2d Cir. 1944). In *In re Bus Stop, Inc.*, 3 B.R. 26, 6 B.C.D. 138 (Bkrtcy.S.D.Fla., 1980), a lessor acquired a judgment before bankruptcy for a breach of a lease, filed a claim for the full amount of the judgment, but was limited to the amount set by § 502(b)(7).

SRI should not be required now to decide which of the leases on the open locations it wishes to assume so long as the rent on those locations is current. SRI operates 666 restaurants and closed more than 400 before bankruptcy. New management needs time to analyze the profitability and sales potential of the operating restaurants. Under the business circumstances of SRI as they stand now, it is reasonable to leave open the requested decision to assume leases, at least during the period in which SRI has the exclusive right to propose and confirm a plan.

Net asks the court to take evidence and "balance the hurt." If the rent reserved is current, there is no present "hurt" to balance. Net has not been harmed.

As to the two closed locations, SRI has said it will immediately reject those leases. In addition, Net has asserted certain pre-petition defaults. These become relevant only if SRI seeks to assume the leases.

This memorandum of decision shall constitute findings of fact and conclusions of law pursuant to Bankruptcy Rule 752. A separate order will be entered.