**In re David POLLOCK and Cheryl Pollock, Debtors.**

**Donald D. MOORE and Lake Siskiyou Campground, R.V. Park & Marina, Inc., Appellants,**

v.

**David POLLOCK and Cheryl Pollock, Appellees.**

BAP No. EC–91–1693–JMeO.

Bankruptcy No. 91–21929–B–11.

United States Bankruptcy Appellate Panel, of the Ninth Circuit.

Argued and Submitted Feb. 20, 1992.

Decided May 12, 1992.

David S. Nommay, Santa Rosa, Cal., for Donald D. Moore, et al.

David Meegan, Sacramento, Cal., for David and Cheryl Pollock.

Before: JONES, MEYERS and OLLASON, Bankruptcy Judges.

## OPINION

JONES, Bankruptcy Judge:

## FACTS

Prior to May of 1989, appellant Donald Moore ("Moore") operated a campground

facility ("Campground") in Siskiyou County, California. Moore, who operated the Campground through a wholly-owned corporation named Lake Siskiyou Campground, R.V. Park & Marina, Inc. ("LSI"), leased the Campground property from Siskiyou County ("County").[1]

In May of 1989, debtors/appellees David and Cheryl Pollock ("Pollocks") agreed to purchase the Campground which included a sublease ("Sublease") of the leasehold under the Master Lease, leasehold improvements and personal property. The purchase price was $1,160,000 with $260,000 payable in cash at the close of escrow and the remainder payable pursuant to a promissory note ("Note") in the amount of $900,-000. Under the Note, monthly interest-only payments were due from August 1, 1989 through August 1, 1991, then monthly principal and interest payments were due over a 15–year period.

A security agreement covers the Pollocks' interest in the Sublease and the "improvements, equipment, furniture, fixtures, and personal property" located at the Campground. A financing statement was recorded with the California Secretary of State and a memorandum of Sublease was recorded with the Siskiyou County Recorder.

Counsel for Moore drafted the Sublease with Moore and Lake Siskiyou, Inc. as sublessors and the Pollocks as sublessees.[2] The rent provision of the Sublease states:

3. SUBLEASE RENT. Sublessee agrees to pay to Sublessor as rent for the premises described the sum of $1.00 and other valuable consideration, the receipt of which is acknowledged and is evidenced by the Purchase Agreement and Deposit Receipt dated May 16, 1989

and the Promissory Note and Security Agreement dated June 30, 1989.

The Sublease also required the Pollocks to pay county franchise fees and to maintain liability and fire insurance on the Campground.

In March 1991, the Pollocks stopped making payments on the Note. They filed a petition under Chapter 11 of the Bankruptcy Code[3] on March 15, 1991.

The Pollocks timely filed a motion to assume the Sublease. They argued that their obligations under the Note were separate and distinct from those under the Sublease and that they were not in default under the Sublease. Thus, the Pollocks asserted that they had complied with Bankruptcy Code § 365(b) and could assume the Sublease.[4]

Moore opposed the Pollocks' motion to assume the Sublease, arguing that the payments required by the Note were an integral part of the Sublease. Thus, Moore asserted that the Pollocks were required to cure all arrearages under the Note as a condition of assuming the Sublease. Moore relied on the language of paragraphs 3 and 12 of the Sublease. Paragraph 3 is quoted above; paragraph 12 provides as follows:

12. DEFAULT AND RE–ENTRY. If default on the part of Sublessee be made in this agreement or any other agreement in which the demised property is the subject of the agreement, including the Security Agreement executed by the Sublessee herein for the benefit of the Sublessor as the secured party, Sublessor shall have the option of declaring this Sublease forfeited, and the same shall entirely cease, and with the giving by Sublessor of thirty (30) days notice, it

---

**1.** Moore was the assignee of a 1969 lease of the property from the Siskiyou County Flood Control and Water Conservation District to G.L. Patterson and Frederick T. Webber ("Master Lease"). The Master Lease was assigned to Moore in 1977 and, as of May 1989, had a remaining term of about thirty years.

**2.** Moore's attorney drafted the Sublease, but not the other documents related to the transaction. He was, however, aware of the existence and the content of the other documents.

**3.** All references to the Bankruptcy Code are to 11 U.S.C. §§ 101–1330 and to the Bankruptcy Rules are to Fed.R.Bankr.P. 1001–9035.

**4.** Section 365(b) requires, inter alia, that as a condition of assuming an unexpired lease of real property the debtor-in-possession must cure or provide adequate assurance that it will promptly cure all defaults under the lease. 11 U.S.C. § 365(b)(1).

shall be lawful for the Sublessor to re-enter and take possession of said premises and remove all persons and property therefrom, and Sublessor may, after taking possession of the premises, at Sublessor's option and without notice to Sublessee, relet the premises, all without prejudice to any other remedies Sublessor may have. It is specifically understood that each and all of the remedies given Sublessor are not exclusive; they are cumulative in addition to any remedies now or later allowed by law. Sublessor shall give to Sublessee a written thirty (30) day notice of the default and an opportunity to cure the default within said thirty (30) day period.

The court granted the motion, finding that the Sublease was severable from the Note and that the Pollocks were not in default under the Sublease. The order granting the motion to assume provides in part:

> D. The debtors' obligations to Moore under the purchase agreement and deposit receipt, the promissory note, and the security agreement are entirely severable from the debtors' obligations to Moore under the sublease. To assume the sublease, the debtors need not cure any defaults which may exist pertaining to the debtors' performance under the terms of those documents.

Moore timely filed a notice of appeal. For the reasons set forth below, we affirm.

## ISSUE AND STANDARD OF REVIEW

Whether the bankruptcy court erred in allowing the Pollocks to assume the Sublease without curing defaults under the Note depends upon whether the Pollocks' obligations under the Note are severable from those under the Sublease. This is a mixed question of law and fact. The bankruptcy court's findings of fact are reviewed for clear error and its conclusions of law are reviewed *de novo. Arizona Appetito's Stores, Inc. v. Paradise Village Inv. Co.,* 893 F.2d 216, 218 (9th Cir.1990).

## DISCUSSION

■ Bankruptcy Code § 365 governs the assumption or rejection of executory contracts and unexpired leases in bankruptcy. Section 365(b) provides that the debtor-in-possession may assume a lease lease under certain conditions. This section provides:

> If there has been a default in the executory contract or unexpired lease of the debtor, the trustee may not assume the contract or lease unless, at the time of assumption of such contract or lease, the trustee—
>
> (A) cures, or provides adequate assurance that the trustee will promptly cure, such default;
>
> (B) compensates, or provides adequate assurance that the trustee will promptly compensate, a party other than the debtor to such contract or lease, for any actual pecuniary loss to such party resulting from such default; and
>
> (C) provides adequate assurance of future performance under such contract or lease.

11 U.S.C. § 365(b)(1).

As noted above, resolution of the issue presented by this appeal hinges on whether the Note payments are severable from the Pollocks' obligations under the Sublease. If the obligations are severable, then all obligations need not be assumed under Bankruptcy Code § 365. *See In re Gardinier,* 831 F.2d 974, 978 (11th Cir.1987).

■ Whether multiple obligations in an agreement or transaction are severable is a question of state law. *In re Cafe Partners/Washington 1983,* 90 B.R. 1, 6 (Bankr.D.C.1988). Under California law, this is a question of the parties' intent based upon the substance and language of the agreement at issue. *See Keene v. Harling,* 61 Cal.2d 318, 320, 38 Cal.Rptr. 513, 515, 392 P.2d 273 (1964); *Waybright v. Meek,* 90 Cal.App. 13, 17, 265 P. 370, 372 (1928). *See also Gardinier,* 831 F.2d at 976 (applying Florida law). The *Gardinier* court noted three factors that should be considered in analyzing whether obligations within an agreement are severable: (1) Whether the nature and purpose of the obligations are different; (2) whether the

consideration for the obligations is separate and distinct; and (3) whether obligations of the parties are interrelated. 831 F.2d at 976.

Here, the trial court determined that the Note payments were severable from the terms of the Sublease. The court focused on three factors in making this determination: (1) Ruling for Moore would cause a forfeiture of the Campground which courts of equity abhor and which would be extremely inequitable to the Pollocks;[5] (2) under paragraph 3 of the Sublease, Moore had already received the consideration promised by the Sublease—$1.00 and the Note; and (3) the Sublease and related agreements put Moore in the position of a creditor secured by the Sublease. Regarding the latter issue, the court stated:

> Now, clearly I think the parties intended that the sublease serve as security for the promissory note. And really I think that the promissory note and the security agreement in this case are very analogous to a promissory note and a deed of trust on real property. The difference is that rather than fee title in the property, the debtor only has a leasehold interest, but nevertheless, it's a long-term leasehold interest.

The record supports the trial court's conclusion. First, the Sublease and the Note are separate documents that are not expressly incorporated into each other. This fact distinguishes the instant case from *In re T & H Diner, Inc.,* 108 B.R. 448 (D.N.J. 1989), where the debtor had executed 35 notes, and a default in any of the notes constituted a default under a lease that was a part of the transaction. *Id.* at 450. The court found the "lease and the sale agreements form one indivisible transaction." *Id.* at 454. The Sublease here contains no such unequivocal language.

Second, the Sublease was supported by its own consideration for which Moore had acknowledged receipt. The structure of

the transaction is the sale of a business, the Campground, which is secured by the Sublease, leasehold improvements and personalty. Thus, the Note payments are not a form of rent under the Sublease but rather the payments due for the sale of the entire operation. The Note payments thus give rise to a claim not for rent but a secured claim against the Pollocks' estate.[6] The Sublease, as a distinct part of the overall business operation, is thus separately assumable.

Finally, because Moore's attorney drafted the Sublease, any ambiguity is resolved against Moore. *See* Cal.Civil Code § 1654 (West Supp.1992); *Union Bank v. Winnebago Indus., Inc.,* 528 F.2d 95, 99 (9th Cir.1975); *Rice v. Capitol Trailer Sales of Redding,* 244 Cal.App.2d 690, 695, 53 Cal. Rptr. 384, 387 (1966). Here, paragraph 12 may be an attempt to incorporate the obligations under the Note into the Sublease, but this is far from clear.

Some factors do support Moore's position that the Note payments are effectively "rent" and should be considered part and parcel of the Sublease: (1) Paragraph 3 of the Sublease references the security agreement which includes the Note; (2) paragraph 12 suggests that a default in payment of the Note allows Moore to declare the Sublease forfeit and retake the premises; and (3) Moore remains liable under the Master Lease even after the Note is paid in full. These factors, however, do not outweigh the multitude of factors that support the trial court's decision that the Note payments and the Sublease are severable.

We thus agree with the trial court that the Note payments were separate and distinct from the obligations contained in the Sublease. As a result, the Pollocks could assume the Sublease without providing either prompt cure of the delinquent Note payments or adequate assurance of their prompt cure.

---

**5.** The court noted that the Pollocks had spent substantial sums improving the property and that the county agency that originally leased the property indicated that it was satisfied with the way the Pollocks were operating the Campground.

**6.** The separate and distinct character of the Sublease is further highlighted by the fact that the Note payments lasted only 17 years yet the term of the Sublease was 30 years.

942

## CONCLUSION

The evidence supports the court's finding that the parties intended the Note and the Sublease to be separate contracts. Because the Pollocks were current under all obligations of the Sublease, the court properly allowed them to assume the Sublease. Accordingly, we AFFIRM.