**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

In Re: THE DRIGGS CORPORATION,
                                    *Debtor.*

---

MARTIN MARIETTA MATERIALS,
INCORPORATED,

         *Plaintiff-Appellant,*

    v.

THE DRIGGS CORPORATION; OFFICIAL
COMMITTEE OF UNSECURED
CREDITOR OF THE DRIGGS
CORPORATION,

        *Defendants-Appellees.*

No. 02-1028

Appeal from the United States District Court
for the District of Maryland, at Greenbelt.
Peter J. Messitte, District Judge.
(CA-01-2531-PJM, BK-01-1-541-PM)

Argued: October 30, 2002

Decided: January 3, 2003

Before WILKINSON, Chief Judge, GREGORY, Circuit Judge,
and Frank J. MAGILL, Senior Circuit Judge of the
United States Court of Appeals for the Eighth Circuit,
sitting by designation.

---

Affirmed by unpublished per curiam opinion.

---

**COUNSEL**

**ARGUED:** James Durling Fullerton, FULLERTON & WISE, Clifton, Virginia, for Appellant. Bradley James Swallow, GORDON, FEINBLATT, ROTHMAN, HOFFBERGER & HOLLANDER, L.L.C., Baltimore, Maryland, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Martin Marietta Materials, Inc. ("Martin Marietta") appeals the district court's decision, affirming the bankruptcy court's determination that Driggs Corporation's ("Driggs") failure to pay for some of its stone requirements did not constitute a default under Driggs' lease with Martin Marietta. For the reasons that follow, we affirm.

I.

In March 1995, Martin Marietta and Driggs entered into a lease agreement under which Driggs agreed to lease Martin Marietta's property and operate an asphalt plant on the same. The lease agreement also contained a provision that required Driggs to purchase all of its stone requirements from Martin Marietta. The lease stated, in relevant part, that "Lessee shall purchase from Lessor all of Lessee's requirements for [stone] to be used in Lessee's asphalt plant on the lease premises . . . ." J.A. 39. The lease also provided that the "[p]ayment for [stone] purchased by the Lessee from Lessor shall be paid in accordance with the terms on the face of Lessor's invoice to Lessee . . . ." *Id.*

In January 2001, Driggs filed a Chapter 11 bankruptcy petition. As part of its bankruptcy proceeding, Driggs assigned its lease with Mar-

tin Marietta to Bardon, Incorporated ("Bardon"). In response to Driggs' attempt to assign the lease to Bardon, Martin Marietta filed a motion to establish cure amount, claiming that Driggs owed Martin Marietta $77,423.29 for unpaid stone purchased under the terms of their lease agreement. Martin Marietta argued that, pursuant to 11 U.S.C. § 365(b)(1)(A), Driggs was required to cure the amount owed before it could properly assign the lease to Bardon.*

In July 2001, the bankruptcy court issued an opinion denying Martin Marietta's motion. In its decision, the bankruptcy court reasoned that Driggs did not default on the lease because payment for the stone was governed by other agreements, namely, invoices, and was not, therefore, a material term as required for purposes of establishing default under the terms of the lease. Martin Marietta appealed to the district court, which affirmed the ruling of the bankruptcy court. Martin Marietta timely filed this appeal.

## II.

In bankruptcy cases, "we review the decision of the district court *de novo*, effectively standing in its place to review directly the findings of fact and conclusions of law made by the bankruptcy court." *Butler v. David Shaw, Inc.*, 72 F.3d 437, 440 (4th Cir. 1996). Accordingly, we review the bankruptcy court's findings of fact for clear error and its conclusions of law *de novo*. *In re Deutchman*, 192 F.3d 457, 459 (4th Cir. 1999).

## III.

Under 11 U.S.C. § 365(b)(1)(A), Driggs must cure any defaults under the lease before it can properly assign the lease to Bardon. The lease agreement defines a default as a failure "to comply with any material terms or conditions of this agreement required to be done, observed, kept, or performed by the other." J.A. 41. The lease also

---

*11 U.S.C. § 365(b)(1)(A) provides that "[i]f there has been a default in an executory contract or unexpired lease of the debtor, the trustee may not assume such contract or lease unless, at the time of assumption of such contract or lease, the trustee cures, or provides adequate assurance that the trustee will promptly cure, such default. . . ."

states that "all provisions of paragraph 8, Environmental Protection" are material terms. *Id.* It is Martin Marietta's contention, however, that Driggs' payment for the stone is also a material term of the lease, thereby triggering the lease's default provision. Because the lease agreement is silent with regard to the materiality of payment for stone, this Court must decide whether Driggs' failure to pay for stone constitutes a default under the terms of the lease agreement, requiring Driggs to cure the amount owed to Martin Marietta pursuant to § 365(b)(1)(A).

It is undisputed that, in addition to the Environmental Protection provisions of the lease, Driggs' continuous operation of an asphalt business on the leased site and its purchase of all its stone requirements from Martin Marietta are material conditions of the lease. It is, however, Driggs' purchase of the stone, not its payment for the stone, that is the material condition of the lease that triggers the default provision. Payment for the stone, therefore, is governed by the terms of the invoice.

Although the lease references commercially-defined price, quantity, and delivery terms, the lease agreement explicitly requires Driggs to pay for its stone requirements "in accordance with the terms shown on the face of [Martin Marietta's] invoice to Driggs." J.A. 39. Under Maryland law, invoices are considered independent contractual agreements that establish the essential and material terms for payment and delivery. *See, e.g.*, *Cavalier Mobile Homes, Inc. v. Liberty Homes, Inc.*, 53 Md. App. 379, 395 (1983). Because the invoices are separate contractual obligations, the lease would have to contain a cross-default provision that incorporates the terms of the invoices, in order for a breach of Driggs' contractual obligations under the terms of the invoice to trigger the default provision of the lease. The lease agreement, however, does not contain a cross-default provision. Thus, Driggs' failure to pay for the stone is merely a breach under the invoice, and not a default under the lease.

Alternatively, Martin Marietta contends that the invoices and lease agreement should be considered one, integrated, non-severable agreement. An examination of the lease and invoices and relevant case law leads this Court to a different conclusion.

Maryland law has not directly addressed the issue of when two or more agreements should be considered one integrated contract. The three-prong test set forth in *In re Plitt Amusement Co.*, 233 B.R. 837 (Bankr. C.D. Cal. 1999), however, is instructive on the issue. In *Plitt*, the bankruptcy court utilized a three-part test to determine whether two separate agreements constitute a single contract between parties: (1) whether the nature and purpose of the obligations are different; (2) whether the consideration for the obligations is separate and distinct; and (3) whether the obligations of the parties are interrelated. 233 B.R. at 843.

Applying these factors to this case, we find that the invoices and lease agreement are separate, independent contracts. First, the stated purposes of the lease are to provide a site for Driggs to operate its asphalt business and to grant Martin Marietta the exclusive right to sell Driggs all of its stone requirements. J.A. 35. On the other hand, the purpose of the invoices was to set forth the terms and conditions applicable to the payment and delivery of stone. Second, the consideration for the lease is distinct from the consideration required under the terms of the invoices. Consistent with the purposes of the lease, Driggs agreed not only to pay Martin Marietta $50,000.00 per year for the use of Martin Marietta's site but also agreed to purchase all of its future stone requirements from Martin Marietta. J.A. 34-35. On the other hand, under the invoices, the consideration was Driggs' agreement to pay a stated price for stone Martin Marietta delivered to Driggs. Third, the obligations of the parties under the lease are not interrelated to those required under the terms of the invoices. As discussed above, under the terms of the lease, Martin Marietta was obligated to provide Driggs with a site on which Driggs could operate its asphalt business, and Driggs was required to pay rent and purchase all of its future stone requirements from Martin Marietta. By contrast, the invoices provided the payment and delivery terms for the stone Driggs ordered from Martin Marietta. In short, because the obligations and consideration required of the parties under the lease are separate and distinct from those required by the invoices, the breach of one does not relieve the parties of their obligations under the other.

IV.

It is evident from the express language of the lease agreement that Driggs and Martin Marietta intended to have the lease contain obliga-

tions independent of those required under the terms of the invoices. Indeed, this conclusion is mandated by the absence of a cross-default provision in the lease. Accordingly, Driggs' failure to pay for the stone does not constitute a default under the lease agreement.

Therefore, we affirm the district court's order affirming the decision of the bankruptcy court.

*AFFIRMED*